IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

ROBERT D. SHELL                                                    PLAINTIFF

v.                              Case No. 6:23-cv-06058

NURSE PRACTITIONER DARRELL
WAYNE ELKIN (Jail Medical Staff, Hot
Springs County Detention Center); CAPTAIN
JOSH LINGO (Hot Springs County Detention
Center); MRS. DONNA                                               DEFENDANTS

## ORDER

Before the Court is the Report and Recommendation filed July 14, 2025, by the Honorable

Christy Comstock, United States Magistrate Judge for the Western District of Arkansas. (ECF

No. 74). Defendant Darrell W. Elkin ("Defendant Elkin") filed an objection. (ECF No. 75). The

Court finds the matter ripe for consideration.

## I.      BACKGROUND

On May 10, 2023, Plaintiff filed this action under 42 U.S.C. § 1983 in connection with

time spent in the Hot Spring County Detention Center.[1] Plaintiff identifies himself as a pretrial

detainee. (ECF No. 4, at 2). Plaintiff suffers from epilepsy and experienced several seizures while

at the Hot Spring County Detention Center. Plaintiff asserts three claims. In Claim One, Plaintiff

alleges that all Defendants denied him medical care by: (1) failing to give him access to "an actual

doctor, neurologist or neurosurgeon" for his "grade 5 Brain Arteriovenous Malformation;" (2)

denying him medication for his epilepsy for "multiple weeks;" and (3) failing to provide medical

---

[1] Plaintiff also brought claims against Defendants in the Nevada County Detention Center. His claims against Nevada County were severed from this case and a new case in the proper District Division was opened. (ECF No. 2).

treatment for a fever Plaintiff believed to be COVID-19.  In Claim Two, Plaintiff alleges that he was placed in a restraint chair by Defendant Donna in response to a seizure.  He further alleges that no one in the detention center would call the ambulance.  He claims that someone called Defendant Elkin, the jail nurse practitioner, but nothing was done.  Instead, he alleges that the detention center staff waited until his seizure was over and returned him to his pod.  Plaintiff asserts Claim Two against Defendants Donna and Elkin.  In Claim Three, Plaintiff alleges that Defendants Elkin and Lingo refused him access to a neurologist or neurosurgeon and refused to request his outside provider medical records.  Plaintiff brings all claims against Defendants in their individual and official capacity.

On January 27, 2025, Defendants Lingo and Donna filed their Motion for Summary Judgment on the merits.  (ECF Nos. 56, 57, 58).  Defendant Lingo and Donna first argue that they provided Plaintiff with access to a medical professional each time he requested it and that Plaintiff's insistence upon a specialist for his medical conditions is merely a disagreement with the jail medical staff's (Defendant Elkin) treatment decisions.  (ECF No. 57, at 3-7).  Defendant Lingo and Donna next argue that they are "entitled to qualified immunity on [Plaintiff's] second claim concerning the use of a restraint chair because they followed a medical professional's instructions following [Plaintiff's] seizure."  (ECF No. 57, at 8).  Defendant Lingo, who is not named for this claim, testifies in his affidavit that "no jail employees witnessed Plaintiff's seizure."  (ECF No. 57, at 9).  Defendant Lingo testifies that he called Defendant Elkin once he learned of Plaintiff's seizure.  He testifies that Defendant Elkin advised Defendant Lingo that it was unnecessary to take Plaintiff to the hospital and to instead monitor Plaintiff's condition for several hours.  (ECF No. 57, at 9).  Defendant Lingo testifies that he does not recall Plaintiff being put in a restraint chair, but he does remember having Plaintiff moved to an area near the front of the jail so staff could

monitor his condition.  (ECF No. 57, at 9-10).

Defendant Lingo and Donna also argue that Defendant Lingo was not personally involved in Plaintiff's treatment with regard to Plaintiff's third claim.  Finally, Defendants Lingo and Donna argue that Hot Spring County is entitled to summary judgment regarding the official capacity claims because Plaintiff alleges no Hot Spring County custom or policy that led to a violation of his constitutional rights.

On February 18, 2025, Plaintiff filed his Response to Defendants Lingo and Donna's Motion for Summary Judgment.  (ECF Ns. 65, 66).  As to Plaintiff's second claim, he notes that the record is unclear as to why he was moved to the front of the jail if no seizure was witnessed. Plaintiff also notes that it is unclear whether Defendant Lingo called Defendant Elkin because Defendant Elkin does not mention speaking with Defendant Lingo in his affidavit.  (ECF No. 65, at 4, 11).

On February 25, 2025, Defendants Lingo and Donna filed a Reply.  (ECF No. 67). Defendant Lingo testifies that Plaintiff was moved to the front area of the jail by staff after Plaintiff "and other inmates reported [the] seizure to [Defendant] Lingo."  (ECF No. 67, at 2; ECF No. 56-3, at 2).

On February 4, 2025, Defendant Elkin filed his Motion for Summary Judgment.  (ECF Nos. 61, 62, 63).  He argues that he was not deliberately indifferent to Plaintiff's needs and provided a detailed summary of over twenty visits with Plaintiff.  (ECF No. 62).  Defendant Elkin made no mention in his affidavit of Defendant Lingo's phone call regarding Plaintiff's seizure, placement in the restraint chair, or his instructions to monitor Plaintiff for several hours.  (ECF No. 63-1).

On February 26, 2025, Plaintiff filed his Response to Defendant Elkin, arguing that

Defendant Elkin is not a properly credentialed advanced practice nurse and was operating outside of his specialty. (ECF Nos. 68, 69). On March 12, 2025, Defendant Elkin replied, noting that his credentials were not at issue and do not create a material question of fact. (ECF No. 73).

On July 14, 2025, Judge Comstock issued the instant Report and Recommendation, recommending that the Court grant in part and deny in part Defendants' summary judgment motions. (ECF No. 74). Judge Comstock recommends that the Court: (1) grant Defendants' motions as to Plaintiff's individual capacity allegations in Plaintiff's Claims One and Three (denial and delay of medical care); (2) grant Defendants' motions as to Plaintiff's official capacity claims; and (3) deny Defendants' motions as to Plaintiff's Claim Two (use of restraint chair). Judge Comstock also recommends that the Court terminate Defendant Lingo from the case. Specifically, Judge Comstock recommends that Defendants' motion as to Claim Two be denied because four genuine issues of material facts remain. First, whether Plaintiff was actually placed in the restraint chair, and if so, why and for how long. Second, whether Plaintiff was experiencing a seizure when he was placed in the restraint chair. Third, who was involved in placing Plaintiff in the restraint chair. Fourth, whether Defendant Donna observed Plaintiff experiencing a seizure severe enough that a layperson would know that medical attention was needed. (ECF No. 74, at 20-21).

On July 22, 2025, Defendant Elkin filed an objection to the Report and Recommendation. (ECF No. 75). Defendant Elkin objected only to the recommendation that the Court deny Defendants' motion for summary judgment on Claim Two concerning Plaintiff's allegation that he was placed in a restraint chair while he was having a seizure. Defendant Elkin testifies in an affidavit that he did not "order, recommend, or advise any of the Hot Spring County Jail staff to place Plaintiff [in] a restraint chair" when he suffers a seizure." (ECF No. 75-1, at 1). Defendant Elkin further testifies that as a healthcare provider, he has "no authority to punish and/or order any

jail staff to place an inmate in a restraint chair." (ECF No. 75-1, at 1). Finally, Defendant Elkin testifies that he had nothing to do with Plaintiff being placed in a restraint chair, and that he "was not even present at the Hot Spring County Jail when [Plaintiff] was placed in the restraint chair." (ECF No. 75-1, at 1).

## II.    STANDARD OF REVIEW

When a party moves for summary judgment, the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact, and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Krenik v. Cnty. Of LeSueur*, 47 F.3d 953, 957 (8th Cir. 1995). "Once the party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Com. v. Dow Chem. Co.*, 165 F.3d 602, 608 (8th Cir. 1999). A fact is material only when its resolution affects the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party. *Id.* at 252. In deciding a motion for summary judgment, the Court must consider all the evidence and all reasonable inferences that arise from the evidence in a light most favorable to the nonmoving party. *Nitsche v. CEO of Osage Valley Elec. Co-Op*, 446 F.3d 841, 845 (8th Cir. 2006).

## III.    DISCUSSION

According to 28 U.S.C. § 646(b)(1), the Court will conduct a *de novo* review of all issues related to Defendant Elkin's objection. No other parties filed objections, and the time to do so has passed. *See* 28 U.S.C. § 636(b)(1). The Court will first examine Judge Comstock's recommendations under the clear error standard, except for Claim Two as it relates to Defendant Elkin's objection. The Court will then turn to the issues raised in Defendant Elkin's objection.

### A. Claims One and Three; and Official Capacity Claims

No parties objected to Judge Comstock's recommendation as to Claims One, Three, or Plaintiff's Official Capacity Claims. Upon review, finding no clear error on the face of the record and that Judge Comstock's reasoning is sound, the Court adopts the Report and Recommendation (ECF No. 74) in part.

### B. Claim Two

Plaintiff asserts his constitutional rights were violated in two ways when he was allegedly placed in the restraint chair by jail staff in response to his seizure. First, Plaintiff asserts that his placement in the restraint chair following his seizure was an unconstitutional condition of confinement. Second, Plaintiff asserts that he was denied medical care because "no one would call an ambulance" and "nothing was done" after Defendant Elkin was allegedly called.

Judge Comstock recommends the Court deny Defendants' motions for summary judgment on Plaintiff's second claim. Defendant Elkins moves the Court to grant his motion for summary judgment in its entirety and to decline to adopt Judge Comstock's recommendation concerning Plaintiff's allegations about being placed in a restraint chair by Defendant Elkin. The Court will determine whether there is a genuine issue of material fact as to Defendant Elkin's involvement in placing Plaintiff in the restraint chair such that he is implicated in Plaintiff's conditions-of-confinement and denial of medical care claims.

#### 1. Conditions-of-Confinement Claim

Plaintiff is a pretrial detainee. As such, the Court will analyze his claim under the Fourteenth Amendment's Due Process Clause. *Stearns v. Inmate Services Corp.*, 957 F.3d 902, 906 (8th Cir. 2020) (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n.16 (1979)). The Supreme Court in *Bell v. Wolfish* articulated the standard governing pretrial detainees' conditions-of-confinement

claims. *Id.* at 907. It held that the government may subject pretrial detainees "to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution." *Id.* at 907 (citing *Bell*, 441 U.S. at 535-36).

There are two ways to determine whether conditions rise to the level of punishment. First, "[a] plaintiff could show that the conditions were intentionally punitive." *Id.* (citing *Bell*, 441 U.S. at 538). Second, "if there is no expressly demonstrated intent to punish, the plaintiff could also show that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id.* (citing *Bell*, 441 U.S. at 538-39). "Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more amount to 'punishment.'" *Bell*, 411 U.A. at 538 (internal citations omitted). "Conversely, if a restriction is not reasonably related to a legitimate goal — if it is arbitrary or purposeless — a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees." *Id.*

Plaintiff alleges he was placed in a restraint chair during his "partial seizure" and "left alone and unattended." (ECF No. 4, at 6). Further, he alleges "no one would call an ambulance" during his seizure, and "nothing was done" after Defendant Elkin was called. (ECF No. 4, at 6). Plaintiff argues that being placed in a restraint chair is a form of prohibited punishment but presents no evidence of express intent to punish by the jail staff. (ECF No. 65, at 7). The only conceivable legitimate governmental purpose for placing Plaintiff in the restraint chair was to contain and monitor his seizure.[2]

---

[2] Defendants did not assert a legitimate governmental purpose pursuant to Plaintiff's conditions-of-confinement claim because they incorrectly used the Eighth Amendment cruel and unusual conditions analysis. (ECF No. 57, at 8-10); *see Steams*, 957 F.3d at 909 (citing *Bell*, 441 U.S. at 535 n.1) (noting that the conditions-of-confinement analysis for pretrial detainees "cannot turn on a standard that merely prohibits cruel and unusual punishment" because "[d]ue process requires that a pretrial detainee *not be punished*").

In the instant Report and Recommendation, Judge Comstock notes that there is a dispute of material fact as to *who* was involved with placing Plaintiff in the restraint chair (if he was). Plaintiff alleges in his Amended Complaint that Defendant "Donna and inmates in the pod" picked him up and "put [him] into a restraint chair and left [him] alone and unattended behind the desk of the front of the jail." (ECF No. 4, at 6). Plaintiff testifies in his deposition that Defendant Donna "pulled [him] out [of his pod] and [Defendant Donna and his cellmates] had [him] sit in the restraint chair." (ECF No. 56-1, at 20). However, Plaintiff also testifies that his memory was "fuzzy" about the incident because it occurred a few years ago. Defendant Lingo states in his affidavit that Defendant Donna "was not involved in the incident surrounding [Plaintiff's] seizure" because she is "an older lady, who did not have the physical capacity to interact with inmates" and because her job did not normally entail "direct interaction with any inmates." (ECF No. 56-3, at 3). Defendant Donna provided no affidavit or any other evidence to support Defendant Lingo's statement.

In his objection to Judge Comstock's recommendation, Defendant Elkin argues that he was not involved in placing Plaintiff in the restraint chair and should thus be dismissed from this claim. Defendant Elkin testifies in an affidavit that he did not "order, recommend, or advise any of the Hot Spring County Jail staff to place Plaintiff in a restraint chair if or when he suffers an alleged seizure" and that he "was not even present at the Hot Spring County Jail when [Plaintiff] was placed in the restraint chair." (ECF No. 75-1, at 1-2). Neither Plaintiff nor any Defendant alleges that Defendant Elkin directed jail staff to place Plaintiff in the restraint chair. Defendant Lingo, who testifies to calling Defendant Elkin upon learning Plaintiff had a seizure, only states that Defendant Elkin "advised that jail staff needed to monitor Shell's condition for the next several hours[.]" (ECF No. 56-3, at 2). Thus, there exists no dispute as to the material fact that Defendant

Elkin played no role in placing and leaving Plaintiff in the restraint chair. Accordingly, summary judgment as to Defendant Elkin must be granted for Plaintiff's conditions-of-confinement claim.

Summary judgment as to Defendant Donna's role in Plaintiff's conditions-of-confinement claim cannot be granted. There exists a question of material fact as to whether Defendant Donna was involved in placing Plaintiff in the restraint chair. As noted above, Plaintiff alleges and testifies that Defendant Donna picked Plaintiff off his "rack" with the help of his cellmates and put Plaintiff into a restraint chair while he was experiencing a seizure. (ECF No. 4, at 6). Defendant Lingo disputes Defendant Donna's role, but neither Defendant Donna nor the other Defendants have offered any further evidence showing that she did not place Plaintiff in the restraint chair.

Finally, Judge Comstock correctly raises other questions of material fact that remain for this claim. Judge Comstock notes that there is a dispute as to whether Plaintiff was placed in a restraint chair, and if so, for what reason and for how long. Plaintiff alleges in a verified complaint and testifies in a deposition that he was placed in the restraint chair after experiencing a seizure. (ECF No. 56-1, at 22-24). Defendant Lingo states that he does "not recall" Plaintiff being placed in the restraint chair. (ECF No. 56-3, at 2). There is no objective evidence such as video surveillance footage or incident reports provided by Defendants. No affidavit from Defendant Donna has been provided.

There also remains a dispute as to whether Plaintiff was experiencing a seizure when he was placed in the restraint chair. Plaintiff testifies in his deposition that his memory of the seizure is fuzzy, but that he remembers "being moved" and put in the restraint chair during or shortly after the seizure. (ECF No. 56-1, at 22-24). Defendant Lingo states in his affidavit that he does "recall an incident where [Plaintiff] and other inmates reported that [Plaintiff] had a seizure." (ECF No.

56-3, at 2). Defendant Lingo further states that he does "not recall" Plaintiff being put in a restraint chair and that if jail staff had seen Plaintiff actively experiencing a seizure, they "would have called paramedics immediately." (ECF No. 56-3, at 2).

Defendant Elkin has met his burden of proof to show that there are no questions of material fact as to his role in Plaintiff's conditions-of-confinement claim of his Claim Two. Defendant Donna has not. Accordingly, summary judgment is granted as to Defendant Elkin on Plaintiff's conditions-of-confinement claim of Claim Two.

### 2. Denial of Medical Care Claim

The Court next turns to whether summary judgment should be granted regarding Defendant Elkins in Plaintiff's allegations of being denied medical care while placed in the restraint chair. Specifically, Plaintiff testifies in his deposition that jail staff put him in the restraint chair, with "no one to watch over" him and refused to call the paramedics despite his requests. (ECF No. 56-1, at 22).[3]

The Eighth Circuit analyzes denial of medical care claims by pretrial detainees under the deliberate indifference standard of the Eighth Amendment. *See e.g., Morris v. Cradduck*, 954 F.3d 1055, 1058 (8th Cir. 2020) (noting that a pretrial detainee has the same rights under the Due Process Clause as an inmate under the Eighth Amendment). To establish a constitutional violation, Plaintiff must demonstrate (1) that he suffers from an "objectively serious medical need" that (2) the "defendant knew about and deliberately disregarded." *Id.*

"A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for

---

[3] Plaintiff's deposition testimony about the incident conflicts. At one point he testifies that he could have been in the chair "overnight or until later that night." (ECF No. 56-1, at 20). At another point he testifies that he did not clearly remember how long he was in the restraint chair but that a corporal told him he was in the chair for one hour. (ECF No. 56-1, at 23).

a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997) (internal quotations omitted). "A prisoner alleging a delay in treatment must present verifying medical evidence that the prison officials ignored an acute or escalating situation or that these delays adversely affected his prognosis[,]" *Holden v. Hirner*, 663 F.3d 336, 342 (8th Cir. 2011) (internal quotations omitted), unless the need for medical attention is obvious to a layperson." *Schaub v. VonWald*, 638 F.3d 905, 919 (8th Cir. 2011).

For the second prong of deliberate indifference, "the prisoner must show more than negligence, more than even gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation." *Popoalii v. Correctional Med. Servs*, 512 F.3d 488, 499 (8th Cir. 2008) (citation omitted). "Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Id.*

It is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment . . . fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman*, 603 F.3d 439, 449 (8th Cir. 2010) (internal citation omitted). Whether prison medical staff deliberately disregarded an inmate's needs is a fact-intensive inquiry. *Id.* at 448. An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* at 449 (holding that a jury could conclude that the prison psychiatrist deliberately disregarded the inmate's serious medical need by failing to provide psychological treatment she prescribed).

There is no question of material fact as to Defendant Elkin's role regarding the care of Plaintiff during this particular seizure. Though Defendant Elkin does not mention receiving a phone call from Defendant Lingo about Plaintiff's seizure in either of his affidavits, both Plaintiff and Defendant Lingo consistently testify that Defendant Elkin was called and advised that

hospitalization was unnecessary. Plaintiff testifies that jail staff called Defendant Elkin who instructed that "he would not give permission for them to have [Plaintiff] taken to the ER." (ECF No. 56-1, at 24). Defendant Lingo testifies that after learning Plaintiff had a seizure, he called Defendant Elkin to ask whether Plaintiff needed to go to the hospital. (ECF No. 56-3, at 2). Defendant Lingo testifies that Defendant Elkin told him "there was nothing a medical professional could do after a seizure" and "advised that jail staff . . . monitor [Plaintiff's] condition for the next several hours." (ECF No. 56-3, at 2).

Plaintiff has not shown that Defendant Elkin deliberately disregarded his needs during this seizure by administering inadequate treatment. The Eighth Circuit has repeatedly held that a prisoner's disagreement over expert medical judgment is not a constitutional violation. *See Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (prisoner's disagreements on location of rehabilitation for burn injuries, amounts of pain medication, and frequency of bandage changes failed to state deliberate indifference); *see also Lair v. Ogelsby*, 859 F.2d 605, 606 (8th Cir. 1988) (mere disagreement about which medication should have been prescribed does not constitute an Eighth Amendment violation).

Plaintiff disagreed with the jail staff's decision not to send him to the ER because he thinks "they could've stopped [the seizure]." (ECF No. 56-1, at 25). Defendant Lingo testifies that Defendant Elkin was called after the seizure and stated that "there was nothing a medical professional could do after a seizure." Plaintiff presents no evidence that going to the ER would have stopped the seizure. Plaintiff testifies in his deposition that no doctor has told him that an emergency room doctor could stop a seizure. (ECF No. 56-1, at 26). Rather, Plaintiff testifies that he requested to go to the ER "to make sure that everything was the same" and "get a better idea of what could help with the seizures," not because he thought this seizure was a life-threatening one.

(ECF No. 56-1, at 16).  Plaintiff also testifies that that he does not go to a doctor or emergency room when he has a seizure when he is not incarcerated.  (ECF No. 56-1, at 15).  Instead, Plaintiff generally "fight[s] through it and wait[s] it out."  (ECF No. 56-1, at 15).

Here, the only role Defendant Elkin played was advising jail staff after Plaintiff's seizure that they should monitor him instead of sending him to the hospital.  That Plaintiff disagrees with this medical advice does not rise to an Eighth Amendment violation.

Questions of material fact remain as to Defendant Donna's role in Plaintiff's denial of medical care claim regarding this seizure.  For instance, as Judge Comstock pointed out, it must be decided whether Defendant Donna observed a seizure which would have indicated to a layperson that medical attention was obviously needed.  Plaintiff testifies that this seizure was more severe and lasted longer than usual.  (ECF No. 56-1, at 22-23).  Defendant Lingo testifies that the seizure was not witnessed by jail staff, and if it had, they would have called paramedics immediately.  (ECF No. 56-3, at 2).

Another question is whether Defendant Donna followed Defendant Elkin's instructions.  Defendant Donna argues that she "followed a medical professional's instructions following [Plaintiff's] seizure," but Defendant Elkin testifies that he never advised jail staff to place Plaintiff in a restraint chair.  (ECF No. 57, at 8); (ECF No. 75-1, at 1).  Plaintiff's testimony is unclear as to when he was placed in the restraint chair.  At one point in his deposition, he testifies that he was placed in the chair during the seizure.  (ECF No. 56-1, at 20).  At another point, he testifies that he was placed in the chair after the seizure.  (ECF No. 56-1, at 23).  The amount of time Plaintiff spent in the chair is also unclear.  Further, Defendant Lingo testifies that Defendant Elkin's advice was to "monitor" Plaintiff for several hours, but Plaintiff testifies that he was put in the restraint chair at the front of the jail with "no one to watch over [him.]"  (ECF No. 56-1, at 22).

13

In summary, Defendant Elkin has established that he is entitled to summary judgment as a matter of law on Plaintiff's second claim because he played no role in placing Plaintiff in the restraint chair and Plaintiff cannot establish that Defendant Elkin's advice deliberately disregarded his medical needs.  Defendant Donna has not met her burden of proof to show that there are no questions of material fact concerning her role in Plaintiff's second claim.  Accordingly, summary judgment on Claim Two will be granted for Defendant Elkin and denied for Defendant Donna.

### IV.    CONCLUSION

For the reasons stated above, the Court adopts Judge Comstock's Report and Recommendation (ECF No. 74) as it relates to Plaintiff's Claim One, Claim Two regarding Defendant Donna, Claim Three, and Official Capacity Claims.  The Court declines to adopt Judge Comstock's Report and Recommendation (ECF No. 74) as it relates to Plaintiff's Claim Two regarding Defendant Elkin.  Defendant Elkin's Motion for Summary Judgment (ECF No. 61) is **GRANTED.**  Defendant Elkin is terminated as a Defendant.

**IT IS SO ORDERED**, this 25th day of September, 2025.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge

14